## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLIAM EDGAR LEWIS, et al.,** | : | **Civ. No. 1:25-CV-446** |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| | : | |
| **TRACEY CHANCE, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION

### I.    Factual Background and Procedural History

This *pro se* case comes before us for consideration of a motion for preliminary injunction filed by the plaintiffs. (Docs. 71). The motion arises in the context of what appears to be contentious domestic relations litigation in the Court of Common Pleas of York County. For their part, the *pro se* plaintiffs have filed a prolix, 217 page complaint on March 11, 2025 which alleges misconduct in the course these state proceedings by a wide array of officials and cites to various federal criminal and civil rights statutes but appears to name a number of private persons as defendants. (Doc. 1). Along with this complaint, the plaintiffs have filed a number of motions which, in essence, seek sweeping preliminary injunctive relief at the outset of the litigation even prior to the filing of responsive pleadings by the defendants. Much of the relief sought by the plaintiffs is directed at state and local officials who are not

1

parties in the instant case. Moreover, the plaintiffs seek relief which goes far beyond preserving the *status quo*. Instead, they seek relief in the form of orders which would reach the ultimate merits of their litigation prior to the filing of any answer by the defendants. Further, this injunctive relief would necessarily require us to intervene in the state court proceedings which have inspired this federal case.

For their part, the defendants have filed a response to this motion which explains that as attorneys acting on behalf of their clients that initiated protection from abuse proceedings in the York County Court of Common Pleas. Court dockets indicate that a PFA was entered against Mr. Lewis, but that the state court declined to impose a similar order on Ms. Holmes. (Doc. 85, Exs. A-C).

It is against this backdrop that we consider the plaintiffs' motion for preliminary injunction. The motion is fully briefed by the parties and is now ripe for resolution. For the reasons set forth below, the motion for preliminary injunction will be denied since the plaintiffs have not made the legal showing necessary for such extraordinary relief.

II.    **Discussion**

A. **Preliminary Injunctions – The Legal Standard**

Motions for preliminary injunctions are governed by Federal Rule of Civil Procedure 65 and are judged by exacting legal standards. In order to obtain a preliminary injunction, the moving party must show (1) a substantial likelihood of

success on the merits; (2) irreparable injury to the moving party if relief is not granted; (3) that a balance of equities favors the movant's request for injunctive relief; and (4) that a preliminary injunction is in the public interest. Benisek v. Lamone, 138 S. Ct. 1932, 1943-44 (2018) (quoting Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 24 (2008)). The first two elements are critical, and are set forth in the conjunctive, as the Court of Appeals for the Third Circuit has held that "[a] failure to show a likelihood of success or a failure to demonstrate irreparable injury must necessarily result in the denial of a preliminary injunction." Instant Air Freight, Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 800 (3d Cir. 1989) (quoting In Re Arthur Treacher's Franchisee Litigation, 689 F.2d 1137, 1143 (3d Cir. 1982) (internal quotations omitted)). In this regard, it is well settled that:

> The movant must, as a threshold matter, establish the two "most critical" factors: likelihood of success on the merits *and* irreparable harm. Reilly v. City of Harrisburg, 858 F.3d 173, 179 (3d Cir. 2017). Under the first factor, the movant must show that "it can win on the merits." Id. This showing must be "significantly better than negligible but not necessarily more likely than not." Id. The second factor carries a slightly enhanced burden: the movant must establish that it is "more likely than not" to suffer irreparable harm absent the requested relief. Id. Only if these "gateway factors" are satisfied may the court consider the third and fourth factors, which aim to balance the equities by examining the potential for harm to others if relief is granted and whether the public interest favors injunctive relief. Id. at 176, 179. The court must then balance all four factors to determine, in its discretion, whether the circumstances warrant injunctive relief. Id. at 179.

Camacho Lopez v. Lowe, 452 F. Supp. 3d 150, 157 (M.D. Pa. 2020) (emphasis added).

3

Further, a preliminary injunction is "never awarded as of right." Benisek, 138 S. Ct. at 1943. Rather, when considering a motion for a preliminary injunction, we are reminded that "a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (quoting 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, pp. 129–130 (2d ed. 1995)). As such, the Third Circuit has long observed that "upon an application for a preliminary injunction to doubt is to deny." Madison Square Garden Corp. v. Braddock, 90 F.2d 924, 927 (3d Cir. 1937).

Moreover:

> [I]n order to secure a preliminary injunction, "[a]ny irreparable harm must be imminent. Cont'l Grp., Inc. v. Amoco Chems. Corp., 614 F.2d 351, 359 (3d Cir. 1980) ('The requisite for injunctive relief has been characterized as a clear showing of *immediate* irreparable injury or a presently existing actual threat.') (emphasis added) (internal quotations omitted); see also, e.g., StrikeForce Techs., Inc. v. WhiteSky, Inc., No. 13-1895, 2013 WL 2658859, at *5 (D.N.J. June 11, 2013) (declining to issue preliminary injunction where plaintiff failed to make 'a clear demonstration' of the imminent threat of disclosure or confidential information). This demands a fact-specific inquiry. See, e.g., Laidlaw, Inc. v. Student Transp. of Am., Inc., 20 F.Supp.2d 727, 766–67 (D.N.J. 1998) ('[I]rreparable harm is not automatically presumed from a finding that plaintiffs have a likelihood of success on the merits; rather, the court must still make a careful examination of the particular facts.')." Synthes, Inc. v. Gregoris, 228 F. Supp. 3d 421, 440 (E.D. Pa. 2017).

Burton v. Wetzel, No. 1:16-CV-1953, 2017 WL 4284345, at *6 (M.D. Pa. Sept. 27, 2017).

4

Likewise:

> [W]here the requested preliminary injunction "is directed not merely at
> preserving the *status quo* but ... at providing mandatory relief, the
> burden on the moving party is particularly heavy." <u>Punnett v. Carter</u>,
> 621 F.2d 578, 582 (3d Cir. 1980). Mandatory injunctions should be
> used sparingly. <u>United States v. Price</u>, 688 F.2d 204, 212 (3d Cir. 1982).
> . . . Furthermore, it is well-settled that "[t]he purpose of a preliminary
> injunction is to preserve the *status quo*, not to decide the issues on their
> merits." <u>Anderson v. Davila</u>, 125 F.3d 148, 156 (3d Cir. 1997).
> Therefore, in a case such as this, where the . . ."plaintiff's request for
> immediate relief in h[er] motion for preliminary injunction necessarily
> seeks resolution of one of the ultimate issues presented in [the] ...
> Complaint, ... [the] plaintiff cannot demonstrate that [s]he will suffer
> irreparable harm if [s]he is not granted a preliminary injunction,
> because the ultimate issue presented will be decided either by this court,
> upon consideration of defendants' motion[s] ..., or at trial. As a result,
> plaintiff's motion for preliminary injunction should be denied."
> <u>Messner</u>, 2009 WL 1406986, at *5.

<u>Burton,</u> 2017 WL 4284345, at *6.

Finally, efforts to use a motion for preliminary injunction to enjoin the

behavior of persons who are not parties to a lawsuit often run afoul of the:

> "[G]eneral rule that a court may not enter an injunction against a person
> who has not been made a party to the case before it ." <u>Additive Controls</u>
> <u>& Measurement Sys., Inc. v. Flowdata, Inc.</u>, 96 F.3d 1390, 1394
> (Fed.Cir.1996) (citing <u>Scott v. Donald</u>, 165 U.S. 107, 117, 17 S.Ct. 262,
> 41 L.Ed. 648 (1897) ("The decree is also objectionable because it
> enjoins persons not parties to the suit.")). Indeed, courts have refused
> to issue injunctions against non-parties. <u>See U.S. Commodity Futures</u>
> <u>Trading Comm'n v. Amaranth Advisors, LLC</u>, 523 F.Supp.2d 328,
> 334–35 (S.D.N.Y.2007) (the court denied the defendant's motion for a
> preliminary injunction against the Federal Energy Regulatory
> Commission because it was not a party to the suit and it was not an
> "officer, agent, servant, employee, or attorney" of any party); <u>Williams</u>
> <u>v. Platt</u>, Civ. No. 03–281–C, 2006 WL 149024 at *2 (W.D.Okla. Jan.18,
> 2006) (unpublished) (the court denied the plaintiff's motion for an

injunction noting that he had "not established a relationship between the preliminary injunction and the underlying civil rights claim, and he seeks to bind non-parties without any suggestion of active concert or participation by the named defendants"). Moreover, once a court has issued an injunction against a party, that injunction may only be enforced against non-parties that are officers, agents, servants, employees, or attorneys of a party, or ones that are in active concert or participation with such non-parties or the party itself. Fed.R.Civ.P. 65(d)(2). To be bound by an injunction, a "non-party must have constructively had his day in court." Harris County, Tex. v. CarMax Auto Superstores Inc., 177 F.3d 306, 314 (5th Cir.1999) ("the relevant inquiry is ... whether [the non-party] had such a key role in the corporation's participation in the injunction proceedings that it can be fairly said that he has had his day in court in relation to the validity of the injunction.") (citation omitted) (emphasis in original).

Robertson v. Samuels, No. 3:13-CV-2500, 2014 WL 347007, at *6–7 (M.D. Pa. Jan. 30, 2014), aff'd, 593 F. App'x 91 (3d Cir. 2014) quoting Banks v. Good, CA 06–253, 2011 WL 2437061 (W.D.Pa. Apr.20, 2011) report and recommendation adopted, CA 06–253, 2011 WL 2418699 (W.D.Pa. June 14, 2011).

It is against these legal benchmarks that we analyze the instant motion for preliminary injunction.

### B. **The Motion for Preliminary Injunction Will Be Denied**.

Mindful of the fact that when considering motions for preliminary injunction we are cautioned that "to doubt is to deny" we will decline the plaintiffs' invitation to secure additional relief that necessarily calls upon us to intervene in state court domestic relations litigation.

In this case, the motion for preliminary injunction fails on several scores. First, while we do not in any way prejudge the ultimate merits of this case, at this juncture it cannot be said that the plaintiffs have has met the first threshold requirement for injunctive relief by showing a likelihood of success on the merits. In this regard, we recognize that, in evaluating the likelihood of success for purposes of a motion for preliminary injunction, a more-likely-than-not showing of success on the merits is not required. Yet, it is not enough that the chance of success on the merits be better than negligible and more than a mere possibility of relief is required. <u>Reilly</u>, 858 F.3d at 179 n.3. Here, we find that this burden is not met since the plaintiffs may encounter of series of significant legal obstacles in pursuing their claims.

At the outset, the plaintiffs' complaint and motion for injunctive relief all appear to bring claims against a law firm for actions taken representing a client in some state court domestic relations litigation. To the extent that the plaintiffs seek to sue private attorneys and law firms alleging federal civil rights violations they fundamentally misconstrue the reach of the federal civil rights statute, 42 U.S.C. § 1983.

It is well established that § 1983 does not, by its own force, create new and independent legal rights to damages in civil rights actions. Rather, § 1983 simply serves as a vehicle for private parties to bring civil actions to vindicate violations of separate and pre-existing legal rights otherwise guaranteed under the Constitution

and laws of the United States. <u>Albright v. Oliver</u>, 510 U.S. 266, 271 (1994); <u>Graham v. Connor</u>, 490 U.S. 386, 393-94 (1989). Therefore, any analysis of the legal sufficiency of a cause of action under § 1983 must begin with an assessment of the validity of the underlying constitutional and statutory claims advanced by the plaintiff.

In this regard, it is also well settled that:

> Section 1983 provides a remedy for deprivations of federally protected rights caused by persons acting under color of state law. The two essential elements of a § 1983 action are: *(1) whether the conduct complained of was committed by a person acting under color of state law*; and (2) whether this conduct deprived a person of a federally protected right. <u>Parratt v. Taylor</u>, 451 U.S. 527, 535 (1981).

<u>Boykin v. Bloomsburg Univ.</u>, 893 F.Supp. 409, 416 (M.D. Pa. 1995), <u>aff'd</u>, 91 F.3d 122 (3d Cir. 1996)(emphasis added). Thus, it is essential to any civil rights claim brought under § 1983 that the plaintiff allege and prove that the defendants were acting under color of law when that defendant allegedly violated the plaintiff's rights. To the extent that a complaint seeks to hold private parties liable for alleged civil rights violations, it fails to state a valid cause of action under 42 U.S.C. § 1983 since the statute typically requires a showing that the defendants are state actors. <u>Am. Mfrs. Mut. Ins. Co. v. Sullivan</u>, 526 U.S. 40, 49-50 (1999).

This principle applies with particular force to civil rights plaintiffs who may also invite the courts to consider lawsuits against private attorneys for their roles representing clients in litigation. With respect to this state action requirement, it is

well settled that the conduct of an attorney representing a client in a state case does not, by itself, rise to the level of state action entitling a plaintiff to bring a federal civil rights action against counsel. See, e.g., West v. Atkins, 487 U.S. 42, 50 (1988); Polk County v. Dodson, 454 U.S. 312 (1981); Pete v. Metcalfe, 8 F.3d 214 (5th Cir. 1993). Therefore, to the extent that the complaint and motion for preliminary injunction seek to sue attorneys and law firms for their role as counsel for a private party in state litigation, these claims may fail as a matter of law.

Further, to the extent that they seek to enjoin nonparties the plaintiffs' motion runs afoul of the general rule that "a court may not enter an injunction against a person who has not been made a party to the case before it". Robertson v. Samuels, No. 3:13-CV-2500, 2014 WL 347007, at *6 (M.D. Pa. Jan. 30, 2014), aff'd, 593 F. App'x 91 (3d Cir. 2014). Therefore, this claim for non-party relief also encounters substantial hurdles.

Likewise, the plaintiffs' motion, which inevitably invites us to set aside or re-examine the validity of state court orders, encounters yet another legal obstacle. As we have explained in the past:

> [W]e lack subject matter jurisdiction over the[se] issues . . . , which necessarily invite a federal court to review, re-examine and reject state court rulings in state domestic relations cases.
>
> This we cannot do. Indeed, the United States Supreme Court has spoken to this issue and has announced a rule, the Rooker–Feldman doctrine, which compels federal district courts to decline invitations to conduct

what amounts to appellate review of state trial court decisions. As described by the Third Circuit:

> That doctrine takes its name from the two Supreme Court cases that gave rise to the doctrine. <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The doctrine is derived from 28 U.S.C. § 1257 which states that "[f]inal judgments or decrees rendered by the highest court of a state in which a decision could be had, may be reviewed by the Supreme Court....". <u>See also Desi's Pizza, Inc. v. City of Wilkes Bar</u><i>re</i>, 321 F.3d 411, 419 (3d Cir.2003). "Since Congress has never conferred a similar power of review on the United States District Courts, the Supreme Court has inferred that Congress did not intend to empower District Courts to review state court decisions." <u>Desi's Pizza</u>, 321 F.3d at 419.

<u>Gary v. Braddock Cemetery</u>, 517 F.3d 195, 200 (3d Cir.2008).

Because federal district courts are not empowered by law to sit as reviewing courts, reexamining state court decisions, "[t]he <u>Rooker–Feldman</u> doctrine deprives a federal district court of jurisdiction in some circumstances to review a state court adjudication." <u>Turner v. Crawford Square Apartments III, LLP</u>, 449 F.3d 542, 547 (3d Cir.2006). Cases construing this jurisdictional limit on the power of federal courts have quite appropriately:

> [E]mphasized the narrow scope of the <u>Rooker–Feldman</u> doctrine, holding that it "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." <u>[Exxon Mobil Corp. v. Saudi Basic Industries Corp.]</u>, 544 U.S. at 284, 125 S.Ct. at 1521–22; <u>see also Lance v. Dennis</u>, 546 U.S. 459, ——, 126 S.Ct. 1198, 1201, 163 L.Ed.2d 1059 (2006).

<u>Id</u>.

However, even within these narrowly drawn confines, it has been consistently recognized that the <u>Rooker–Feldman</u> doctrine prevents federal judges from considering civil rights lawsuits which seek to re-examine state domestic relations court rulings that are presented "by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced." <u>Kwasnik v. Leblon</u>, 228 F. App'x 238, 242 (3d Cir.2007). In such instances, the federal courts have typically deferred to the state court domestic relations decisions, and rebuffed efforts to use federal civil rights laws to review, or reverse, those state court rulings. <u>See, e.g.,</u> <u>Marran v. Marran</u>, 376 F.3d 143 (3d Cir.2004); <u>Kwasnik</u> 228 F. App'x 238, 242; <u>Smith v. Department of Human Services</u>, 198 F. App'x 227 (3d Cir.2006); <u>Van Tassel v. Lawrence County Domestic Relations Section</u>, 659 F.Supp.2d 672, 690 (W.D.Pa.2009) <u>aff'd sub nom. Van Tassel v. Lawrence County Domestic Relations Sections</u>, 390 F. App'x 201 (3d Cir.2010) (<u>Rooker–Feldman</u> doctrine operates as a jurisdictional bar to plaintiff's claims if the injuries of which she complains were caused by a state court judgment or ruling which was entered against her); <u>Buchanan v. Gay</u>, 491 F.Supp.2d 483, 487 (D.Del.2007); <u>Rose v. County of York</u>, No. 05–5820, 2007 WL 136682 (E.D.Pa. Jan.12, 2007); <u>Logan v. Lillie</u>, 965 F.Supp. 695, 696 (E.D.Pa.1997) <u>aff'd</u>, 142 F.3d 428 (3d Cir.1998); <u>Behr v. Snider</u>, 900 F.Supp. 719, 721 (E.D.Pa.1995).

<u>Rose v. York Cnty.</u>, No. 1:13-CV-2056, 2013 WL 4456220, at *3–4 (M.D. Pa. Aug. 1, 2013), <u>report and recommendation adopted,</u> No. 1:13-CV-2056, 2013 WL 4434748 (M.D. Pa. Aug. 16, 2013). These jurisdictional and jurisprudential considerations also weigh against granting sweeping injunctive relief at the outset of this litigation, since that relief would necessarily imply the invalidity of at least some state court orders.

Additionally, this motion does not merely request that we preserve the *status quo*; instead, the plaintiffs seek affirmative relief on the ultimate merits of this

litigation. Since "a mandatory injunction is an extraordinary remedy that is only granted sparingly by the courts," Trinity Indus., Inc. v. Chicago Bridge & Iron Co., 735 F.3d 131, 139 (3d Cir. 2013), we should refrain from affording this form of sweeping mandatory relief at the outset of this litigation.

Further, the plaintiffs' separate demand for damages exposes yet another shortcoming in this motion for preliminary injunction. It is axiomatic that to obtain preliminary injunctive relief:

> [A] plaintiff [must] demonstrates[] significant risk that he or she will experience harm *that cannot adequately be compensated after the fact by monetary damages*. See Frank's GMC Truck Center, Inc. v. General Motors Corp., 847 F.2d 100, 102–03 (3d Cir.1988). This is not an easy burden. See, e.g., Morton v. Beyer, 822 F.2d 364, 371–72 (3d Cir.1987).

Adams v. Freedom Forge Corp., 204 F.3d 475, 484–85 (3d Cir. 2000) (emphasis added). Therefore, these requests for compensatory damages suggests that whatever injury the plaintiffs allege that they suffered can be compensated for after the fact through damages. In such instances, a preliminary injunction is inappropriate.

While the plaintiffs' failure to meet these two essential threshold requirements of a substantial likelihood of success on the merits and irreparable harm is fatal to this motion for preliminary injunction, we will briefly address the remaining factors under Rule 65, whether a balance of equities favors the movant's request for injunctive relief and whether a preliminary injunction is in the public interest. With respect to these two considerations, we find that a balancing of the equities between

the parties tilts in favor of these private party defendants who typically may not be held liable for federal civil rights violations. Given the legal challenges inherent in attempting to hold private parties liable for federal civil rights violations, we should be chary when considering requests to enjoin such parties.

We also conclude that the greater public interest is served through the denial of this motion for preliminary injunctive relief, since the remedies sought here would necessarily invite us to re-examine and potential interfere with prior state court proceedings in the field of domestic relations. We should approach such issues with great caution given our uncertain jurisdiction in this field since:

> The domestic relations exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees," Ankenbrandt v. Richards, 504 U.S. 689, 703, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992), because it has long been settled that "[t]he whole subject of the domestic relations of husband and wife ... belongs to the laws of the states, and not to the laws of the United States," Ex parte Burrus, 136 U.S. 586, 593–94, 10 S.Ct. 850, 34 L.Ed. 500 (1890).

Daniels v. Cynkin, 34 F. Supp. 3d 433, 441 (D.N.J. 2014), aff'd, 597 F. App'x 704 (3d Cir. 2015).

Finally, to the extent that the plaintiffs seek in this motion to have us reconsider our prior rulings denying entry of default judgments in this case, the legal standards that govern motions to reconsider are both clear, and clearly compelling. "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." Harsco Corp. v. Zlotnicki, 779 F.2d

906, 909 (3d Cir. 1985). Typically, such a motion should only be granted in three, narrowly defined circumstances, where there is either : "(1) [an] intervening change in controlling law, (2) availability of new evidence not previously available, or (3) need to correct a clear error of law or prevent manifest injustice". Dodge v. Susquehanna Univ., 796 F.Supp. 829, 830 (M.D. Pa. 1992 ). As the United States Court of Appeals for the Third Circuit has aptly observed:

> "The purpose of a motion for reconsideration ... is to correct manifest errors of law or fact or to present newly discovered evidence." Max's Seafood Café, 176 F.3d at 677 (quoting Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir.1985)). "Accordingly, a judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." Id. (citation omitted).

Howard Hess Dental Laboratories Inc. v. Dentsply Intern., Inc., 602 F.3d 237, 251 (3d Cir. 2010). Thus, it is well-settled that a mere disagreement with the court does not translate into the type of clear error of law which justifies reconsideration of a ruling. Dodge, 796 F.Supp. at 830. Furthermore, "[b]ecause federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly." Continental Casualty Co. v. Diversified Indus., Inc., 884 F.Supp. 937, 943 (E.D. Pa. 1995).

At this juncture, we do not believe that the plaintiffs' latest submission meets these exacting legal benchmarks that would compel reconsideration of our prior

rulings, which are intended to allow for a prompt merits resolution of this dispute.

Therefore, we decline to reconsider these rulings at this time.

### III.    <u>**Conclusion**</u>

Accordingly, for the foregoing reasons, the plaintiffs' motion for a preliminary injunction (Doc. 71) is DENIED.

An appropriate order follows.

<u>*S/ Martin C. Carlson*</u>
Martin C. Carlson
United States Magistrate Judge

DATED: May 19, 2025

15