## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLIAM EDGAR LEWIS, et al.,** | : | **Civ. No. 1:25-CV-446** |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| | : | |
| **TRACEY CHANCE, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## <u>MEMORANDUM AND ORDER</u>

### I.    <u>Factual Background and Procedural History</u>

This *pro se* case, which has inspired a tortured procedural history in a short span of weeks, comes before us for consideration of two motions filed by the plaintiffs seeking entry of default judgments in their favor with respect to two unrepresented defendants. (Docs. 139, 141).

These motions are set against the backdrop of contentious domestic relations litigation that is ongoing in the Court of Common Pleas of York County. For their part, the *pro se* plaintiffs have filed a prolix, 217 page complaint on March 11, 2025 which alleges misconduct in the course these state proceedings by a wide array of officials and cites to various federal criminal and civil rights statutes but also appears to name a number of private persons as defendants. In particular the complaint seeks

to sue private persons and attorneys involved in this state court domestic relations litigation. (Doc. 1).

The scope of the claims asserted by Lewis and Holmes is breathtakingly broad, sweeping in its scope, and legally problematic on a host of scores. Indeed, it appears that the plaintiffs assert approximately 255 causes of action in their complaint:

> The causes of action consist of the following: Twenty-five (25) 1st Amendment violations; two (2) 2nd Amendment violations; eight (8) 4th Amendment violations; twenty-three (23) 5th Amendment violations; sixteen (16) 6th Amendment violations; five (5) 8th Amendment violations; four (4) 9th Amendment violations; 10th Amendment violation; 13th Amendment violation; thirty-seven (37) 14th Amendment violations; four (4) 18 U.S.C. § 241 violations; twenty-three (23) 18 U.S.C. § 242 violations; two (2) 18 U.S.C. § 1001 violations; twenty-four (24) 42 U.S.C. § 1983 violations; three (3) 18 U.S.C. § 1503 violations; 18 U.S.C. §1512 violation; 28 U.S.C. § 1738A violation; four (4) 18 U.S.C. § 1341 violations; three (3) 18 U.S.C. § 1343 violations; six (6) 18 U.S.C. § 371 violations; two (2) 42 U.S.C. § 200d violations; 42 U.S.C. § 2000e violation; three (3) 18 U.S.C. § 1001 violations; three (3) 42 U.S.C. § 1985 violations; 18 U.S.C. § 1519 violation; 18 U.S.C. § 1621 violation; a RICO Act violation; two (2) counts of Forgery and Fraud under State and Federal law; three (3) counts of Defamation under State and Federal law; three (3) counts of Intentional Infliction of Emotion Distress under State law; violation of Parental Rights; a count of Judicial Misconduct and Maladministration under State and Federal law; a count of Unlawful Custodial Interference under State and Federal law; a count of Fraud under Common law and Statutory law; a count of Malicious Prosecution; a count of Retaliation; violation of Family Integrity and Parental Rights; a count of False Light Invasion of Privacy under State law; thirteen (13)

counts of Legal Malpractice; a count of Fraud and Coercion under Common law and State law; violation of Family Law under Common law and State law; a count of Harassment; a count of Abuse of Process under State law; a count of Breach of Confidentiality under State and Federal law; two (2) counts of Fraud and Misrepresentation under State law; a count of Deprivation of Rights Under Color of Law under State and Federal law; two (2) Ethical Violations of the ABA Model Rules of Professional Conduct; a count of False Light under State Law; violations of State Rules of Civil Procedure and Local Court Rules; a count of Fraud under Common law and Criminal law; three (3) counts of Fraudulent Misrepresentation under State law; a count of Coercion and Emotional Abuse under State law; a count of Psychological Manipulation and Negligence under State law; a count of Abuse of Power under State and Federal law; a count of Fraudulent Misrepresentation and Abuse of Process under State law; and violation of Fed. R. Civ. P. 11.

(Doc. 92 at 25-26).

Moreover, in this complaint the plaintiffs seek wide ranging injunctive relief, relief which would necessarily require us to intervene in the pending state court proceedings which have inspired this federal case; vacate prior state court orders; and direct the future outcome of this pending state litigation in a fashion which would result in a judgment in state court which favored these federal plaintiffs.

In response to this bewildering array of claims, three of the defendants, who were represented by counsel, moved to dismiss the complaint. (Doc. 92). We granted this motion and dismissed the complaint as to these defendants finding that the complaint was fatally flawed in numerous ways which could not be remedied.(Doc. 146, 147).

In the meanwhile, at the *pro se* plaintiffs' request, we ordered service of the complaint upon two unrepresented defendants, Wayne and Tracey Chance. It is evident from the complaint that these unrepresented parties are private individuals who are now caught up in this toxic state court domestic relations litigation. Proof of service was filed by the U.S. Marshal on June 9, 2025. (Docs. 118, 119). However, these *pro se* defendants have not yet answered or otherwise responded to this complaint. Accordingly, the plaintiffs have now moved for the entry of default judgments against the unrepresented defendants. (Docs. 139, 141).[1]

Thus, we are presented with the following curiosity: We have found that the plaintiffs' complaint is deeply flawed and subject to dismissal on multiple scores. Despite this finding, the plaintiffs seek a default judgment in their favor with respect to two unrepresented and unresponsive defendants. This request, if granted, would award a judgment in favor of the plaintiffs on a complaint which we have concluded plainly fails as a matter of law.

The law does not compel this curious outcome which would enter a judgment in favor of plaintiffs on a legally frivolous complaint. Instead: "It is settled law that a court may deny a motion for a default judgment if it determines *sua sponte* that the

---

[1] We note that in their motions the plaintiffs now allege that these unrepresented defendants were successfully served and defaulted earlier in these proceedings. This is incorrect. In fact, the plaintiffs have previously conceded that: "All parties were successfully served, *with the exception of Defendants Tracey L. Chance, Wayne Chance, and Ailani J. Orr*." (Doc. 9, at 6) (emphasis added).

complaint fails to state a claim." <u>Choi v. 37 Parsons Realty LLC</u>, 642 F. Supp. 3d 329, 331 (E.D.N.Y. 2022). Thus, "the default judgment motion should be denied and the complaint dismissed if it is frivolous, or, at least, if it is clear that the plaintiff could not prevail as a matter of law." <u>Id</u>. at 336.

With this understanding of our role and responsibility in this odd setting, where the plaintiffs seek entry of default judgments in their favor based upon a complaint which we have found patently lacks legal merit, we instructed the plaintiffs on or before **July 15, 2025**, to show cause why the motions for entry of default (Docs. 139, 141) should not be denied and the complaint dismissed given our prior finding that the complaint is subject to dismissal on numerous grounds. (Doc. 148). At the plaintiffs' request, we then extended their response deadline to July 18, 2025. (Doc. 153). We also instructed the unrepresented and unresponsive defendants to show cause why they have failed to defend this lawsuit.

All of these deadlines have now passed and what is revealed is a race to the bottom by the remaining *pro se* parties in this litigation. Thus, the unrepresented and unresponsive defendants remain both unrepresented and unresponsive. The *pro se* plaintiffs, in turn, remain insistent that they are entitled to a default judgment in their favor notwithstanding the fact that their complaint has been found to be devoid of any legal merit. (Doc. 154).

Accordingly, we deem these motions ripe for resolution. Upon consideration, for the reasons set forth below, the plaintiffs' motions for entry of default will be denied, the plaintiffs' complaint will be dismissed as to all defendants, and this case will be closed.

## II.    <u>Discussion</u>

### A. <u>The Court's Responsibility When Presented With Default Motions Based Upon a Meritless Complaint.</u>

As we have observed in its current posture this case presents a true oddity: The plaintiffs have filed what we have found to be a wholly meritless civil complaint. Yet, because some unrepresented parties have failed to respond to this complaint, the plaintiffs seek victory with respect to these defendants, a victory unmoored to the merits through motions for default judgments in their favor.

This they cannot do. Rather, when the court is presented with motions for entry of default judgments based upon a meritless complaint: "It is settled law that a court may deny a motion for a default judgment if it determines *sua sponte* that the complaint fails to state a claim." <u>Choi v. 37 Parsons Realty LLC</u>, 642 F. Supp. 3d 329, 331 (E.D.N.Y. 2022). Instead, in this unusual setting "the default judgment motion should be denied and the complaint dismissed if it is frivolous, or, at least, if it is clear that the plaintiff could not prevail as a matter of law." <u>Id</u>. at 336. Thus, notwithstanding the unrepresented defendants' failure to respond, before the plaintiffs can prevail on their motions for entry of default judgment, they must show

that their complaint is not frivolous and states a claim upon which relief may be granted. If the plaintiffs cannot show the colorable merit of their claims, then their default motions fail, and the proper course is the dismissal of the lawsuit.

In determining whether a complaint states a claim upon which relief can be granted, we are reminded that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), continuing with our opinion in <u>Phillips</u> [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)], and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u>, –U.S.–, 129 S. Ct. 1937 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. <u>Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc.</u>, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." <u>Associated Gen. Contractors of Cal. v. California State Council of</u>

7

Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic

Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action, a

plaintiff must provide some factual grounds for relief which "requires more than

labels and conclusions, and a formulaic recitation of the elements of a cause of

actions will not do." Id. at 555. "Factual allegations must be enough to raise a right

to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has

underscored that a trial court must assess whether a complaint states facts upon

which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal,

556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to

dismiss, a court should "begin by identifying pleadings that, because they are no

more than conclusions, are not entitled to the assumption of truth." Id. at 679.

According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." Id. at 678. Rather,

in conducting a review of the adequacy of a complaint, the Supreme Court has

advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than
> conclusions are not entitled to the assumption of truth. While legal
> conclusions can provide the framework of a complaint, they must be
> supported by factual allegations. When there are well-pleaded factual
> allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following <u>Twombly</u> and <u>Iqbal</u>, a well-pleaded complaint must contain more than mere legal labels and conclusions; it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter <u>Iqbal</u>, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

<u>Fowler</u>, 578 F.3d at 210-11.

As the Court of Appeals has observed:

> The Supreme Court in <u>Twombly</u> set forth the "plausibility" standard for overcoming a motion to dismiss and refined this approach in <u>Iqbal</u>. The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570, 127 S. Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 129 S. Ct. at 1949 (citing <u>Twombly</u>, 550 U.S. at 556, 127 S. Ct. 1955). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> A complaint which pleads facts "merely consistent with" a defendant's liability, [ ] "stops short of the line between possibility and plausibility of 'entitlement of relief.' "

<u>Burtch v. Milberg Factors, Inc.</u>, 662 F.3d 212, 220-21 (3d Cir. 2011), <u>cert. denied</u>, 132 S. Ct. 1861, 182 L.Ed.2d 644 (2012).

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S. Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see also U.S. Express Lines, Ltd. v. Higgins, 281 F.3d382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be

considered without converting the motion to dismiss in one for summary judgment"). However, the court may not rely on other parts of the record in determining a motion to dismiss, or when determining whether a proposed amended complaint is futile because it fails to state a claim upon which relief may be granted. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

It is against these legal guideposts that we assess the sufficiency of the plaintiffs' claims.

**B.** **The Plaintiffs' Complaint Fails as a Matter of Law; Hence, Their Default Motions Will Be Denied and This Case Will Be Dismissed.**

In this case, the complaint lodged by Lewis and Holmes is profoundly flawed in multiple respects. We have in the course of this litigation previously brought many of the defects in this pleading to the plaintiffs' attention, but to no avail; they have persisted in pursuing these fruitless claims. The fatal deficiencies in this pleading, which compel dismissal of the complaint, are addressed separately below.

**1.** **The Rooker-Feldman Doctrine Applies Here**

At the outset, the plaintiffs' complaint inevitably invites us to review, re-examine, and reverse various state court orders in a pending state domestic relations case. This we cannot do. To the extent that the plaintiffs urge us, in effect, to sit as a state appellate court and vacate prior state court rulings, their complaint encounters an insurmountable threshold legal obstacle. As we have explained in the past:

[W]e lack subject matter jurisdiction over the[se] issues . . . , which necessarily invite a federal court to review, re-examine and reject state court rulings in state domestic relations cases.

This we cannot do. Indeed, the United States Supreme Court has spoken to this issue and has announced a rule, the Rooker–Feldman doctrine, which compels federal district courts to decline invitations to conduct what amounts to appellate review of state trial court decisions. As described by the Third Circuit:

> That doctrine takes its name from the two Supreme Court cases that gave rise to the doctrine. Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The doctrine is derived from 28 U.S.C. § 1257 which states that "[f]inal judgments or decrees rendered by the highest court of a state in which a decision could be had, may be reviewed by the Supreme Court....". See also Desi's Pizza, Inc. v. City of Wilkes Barre, 321 F.3d 411, 419 (3d Cir.2003). "Since Congress has never conferred a similar power of review on the United States District Courts, the Supreme Court has inferred that Congress did not intend to empower District Courts to review state court decisions." Desi's Pizza, 321 F.3d at 419.

Gary v. Braddock Cemetery, 517 F.3d 195, 200 (3d Cir.2008).

Because federal district courts are not empowered by law to sit as reviewing courts, reexamining state court decisions, "[t]he Rooker–Feldman doctrine deprives a federal district court of jurisdiction in some circumstances to review a state court adjudication." Turner v. Crawford Square Apartments III, LLP, 449 F.3d 542, 547 (3d Cir.2006). Cases construing this jurisdictional limit on the power of federal courts have quite appropriately:

> [E]mphasized the narrow scope of the Rooker–Feldman doctrine, holding that it "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings

commenced and inviting district court review and rejection of those judgments." [Exxon Mobil Corp. v. Saudi Basic Industries Corp.], 544 U.S. at 284, 125 S.Ct. at 1521–22; see also Lance v. Dennis, 546 U.S. 459, ——, 126 S.Ct. 1198, 1201, 163 L.Ed.2d 1059 (2006).

Id.

However, even within these narrowly drawn confines, it has been consistently recognized that the Rooker–Feldman doctrine prevents federal judges from considering civil rights lawsuits which seek to re-examine state domestic relations court rulings that are presented "by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced." Kwasnik v. Leblon, 228 F. App'x 238, 242 (3d Cir.2007). In such instances, the federal courts have typically deferred to the state court domestic relations decisions, and rebuffed efforts to use federal civil rights laws to review, or reverse, those state court rulings. See, e.g., Marran v. Marran, 376 F.3d 143 (3d Cir.2004); Kwasnik 228 F. App'x 238, 242; Smith v. Department of Human Services, 198 F. App'x 227 (3d Cir.2006); Van Tassel v. Lawrence County Domestic Relations Section, 659 F.Supp.2d 672, 690 (W.D.Pa.2009) aff'd sub nom. Van Tassel v. Lawrence County Domestic Relations Sections, 390 F. App'x 201 (3d Cir.2010) (Rooker–Feldman doctrine operates as a jurisdictional bar to plaintiff's claims if the injuries of which she complains were caused by a state court judgment or ruling which was entered against her); Buchanan v. Gay, 491 F.Supp.2d 483, 487 (D.Del.2007); Rose v. County of York, No. 05–5820, 2007 WL 136682 (E.D.Pa. Jan.12, 2007); Logan v. Lillie, 965 F.Supp. 695, 696 (E.D.Pa.1997) aff'd, 142 F.3d 428 (3d Cir.1998); Behr v. Snider, 900 F.Supp. 719, 721 (E.D.Pa.1995).

Rose v. York Cnty., No. 1:13-CV-2056, 2013 WL 4456220, at *3–4 (M.D. Pa. Aug. 1, 2013), report and recommendation adopted, No. 1:13-CV-2056, 2013 WL 4434748 (M.D. Pa. Aug. 16, 2013). Simply put, under the Rooker-Feldman doctrine the plaintiffs are not entitled to relief which would necessarily imply the invalidity

of at least some state court orders. The plaintiffs cannot overcome this bar, as they attempt to do, by asserting that the state court orders they challenge are void or illegitimate. The determination of the validity of a state court order in a pending state case is a task for the state courts to decide. The plaintiffs cannot invite us to serve as some form of *ad hoc* state appellate court, ruling on the legitimacy of state court orders.  Since this is precisely what the plaintiffs urge us to do in their pleading, this complaint fails as a matter of law and should be dismissed.

### 2.  <u>The Younger Abstention Doctrine Also Applies Here</u>.

Beyond inviting us to set aside orders previously entered in the state court litigation, the plaintiffs' complaint also reaches out prospectively insisting that we should dictate the future course of the litigation by enjoining the state courts from taking any further action that displeases Lewis and Holmes in this domestic relations litigation. To the extent that the plaintiffs invite us to enjoin future enforcement of state court orders in a pending domestic relations case, this *pro se* pleading runs afoul of another settled tenet of federal law, the <u>Younger</u> abstention doctrine.

The <u>Younger</u> abstention doctrine is inspired by basic considerations of comity that are fundamental to our federal system of government. As defined by the courts: "<u>Younger</u> abstention is a legal doctrine granting federal courts discretion to abstain from exercising jurisdiction over a claim when resolution of that claim would interfere with an ongoing state proceeding." <u>Kendall v. Russell</u>, 572 F.3d 126, 130

(3d Cir. 2009) (citing Younger v. Harris, 401 U.S. 37, 41 (1971) ("[W]e have concluded that the judgment of the District Court, enjoining appellant Younger from prosecuting under these California statutes, must be reversed as a violation of the national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances")).

This doctrine, which is informed by principles of comity, is also guided by these same principles in its application. As the Third Circuit has observed:

> "A federal district court has discretion to abstain from exercising jurisdiction over a particular claim where resolution of that claim in federal court would offend principles of comity by interfering with an ongoing state proceeding." Addiction Specialists, Inc. v. Twp. of Hampton, 411 F.3d 399, 408 (3d Cir.2005) (citing Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)). As noted earlier, the Younger doctrine allows a district court to abstain, but that discretion can properly be exercised only when (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims. Matusow v. Trans-County Title Agency, LLC, 545 F.3d 241, 248 (3d Cir.2008).

Kendall, 572 F.3d at 131.

Once these three legal requirements for Younger abstention are met, the decision to abstain rests in the sound discretion of the district court and will not be disturbed absent an abuse of that discretion. Lui v. Commission on Adult Entertainment Establishments, 369 F.3d 319, 325 (3d Cir. 2004). Moreover, applying these standards, federal courts frequently abstain from hearing matters which necessarily interfere with on-going state cases. Lui, 369 F.3d 319; Zahl v.

Harper, 282 F.3d 204 (3d Cir.2002). Indeed, the Court of Appeals has expressly applied Younger abstention to state court domestic relations litigation, holding that: "This is precisely the type of case suited to Younger abstention, as the state proceeding implicates the important state interest of preserving the state's judicial system." Lazaridis v. Wehmer, 591 F.3d 666, 671 (3d Cir.2010).

In this case, the plaintiff's *pro se* complaint reveals that all of the legal prerequisites for Younger abstention are present. First, it is evident that there are state proceedings in this case. In fact, the plaintiffs have filed pleadings that acknowledge on-going state court hearings but voiced an intent to boycott those proceedings, a contumacious course of conduct which they invite us to endorse by enjoining the state courts. Second, it is also apparent that those proceedings afford the plaintiffs a full and fair opportunity to litigate the issues raised in this lawsuit in these state cases. See Sullivan v. Linebaugh, 362 F. App'x 248, 249–50 (3d Cir. 2010). Finally, it is clear that the state proceedings implicate important state interests, since the state case involves domestic relations matters, an issue of paramount importance to the state. See Lazaridis, 591 F.3d at 671. Since the legal requirements for Younger abstention are fully met here, the decision to abstain rests in the sound discretion of this Court. However, given the important state interest in enforcement of its domestic relations rulings, and recognizing that the state courts are prepared to fully address the merits of these matters, we believe that the proper

16

exercise of this discretion weighs in favor of abstention and dismissal of this complaint.

### 3.  <u>The Plaintiffs' Federal Civil Rights Claims Fail as a Matter of Law.</u>

Beyond these initial concerns, Lewis and Holmes' complaint is substantively flawed in yet another crucial respect. Stripped to its essence, the plaintiffs' complaint attempts to bring federal civil rights claims against private litigants and a law firm for actions taken representing a client in some state domestic relations litigation. To the extent that the plaintiffs seek to sue private parties, and their attorneys and law firms, alleging federal civil rights violations, they fundamentally misconstrue the reach of the federal civil rights statute upon which they rely, 42 U.S.C. § 1983.

It is well established that § 1983 does not, by its own force, create new and independent legal rights to damages in civil rights actions. Rather, § 1983 simply serves as a vehicle for private parties to bring civil actions to vindicate violations of separate and pre-existing legal rights otherwise guaranteed under the Constitution and laws of the United States. <u>Albright v. Oliver</u>, 510 U.S. 266, 271 (1994); <u>Graham v. Connor</u>, 490 U.S. 386, 393-94 (1989). Therefore, any analysis of the legal sufficiency of a cause of action under § 1983 must begin with an assessment of the validity of the underlying constitutional and statutory claims advanced by the plaintiff.

In this regard, it is also well settled that:

> Section 1983 provides a remedy for deprivations of federally protected
> rights caused by persons acting under color of state law. The two
> essential elements of a § 1983 action are: *(1) whether the conduct
> complained of was committed by a person acting under color of state
> law*; and (2) whether this conduct deprived a person of a federally
> protected right. <u>Parratt v. Taylor</u>, 451 U.S. 527, 535 (1981).

<u>Boykin v. Bloomsburg Univ.</u>, 893 F.Supp. 409, 416 (M.D. Pa. 1995), <u>aff'd</u>, 91 F.3d

122 (3d Cir. 1996) (emphasis added). Thus, it is essential to any civil rights claim

brought under § 1983 that the plaintiff allege and prove that the defendants were

acting under color of law when that defendant allegedly violated the plaintiff's rights.

To the extent that a complaint seeks to hold private parties liable for alleged civil

rights violations, it fails to state a valid cause of action under 42 U.S.C. § 1983 since

the statute typically requires a showing that the defendants are state actors. <u>Am.

Mfrs. Mut. Ins. Co. v. Sullivan</u>, 526 U.S. 40, 49-50 (1999).

This principle applies with particular force to civil rights plaintiffs, like Lewis

and Holmes, who may also invite the courts to consider lawsuits against private

parties and attorneys for their roles representing clients in litigation. With respect to

this state action requirement, it is well settled that the conduct of an attorney

representing a client in a state case does not, by itself, rise to the level of state action

entitling a plaintiff to bring a federal civil rights action against counsel. <u>See, e.g.</u>,

<u>West v. Atkins</u>, 487 U.S. 42, 50 (1988); <u>Polk County v. Dodson</u>, 454 U.S. 312

(1981); <u>Pete v. Metcalfe</u>, 8 F.3d 214 (5th Cir. 1993). Therefore, to the extent that the

complaint seeks to sue private parties, attorneys and law firms for federal civil rights

violations arising out of their role as counsel in state domestic relations litigation, these claims fail as a matter of law and must be dismissed.

### 4. **The Plaintiffs May Not Use a Civil Case as a Vehicle for a Criminal Prosecution**.

In addition, the plaintiffs' civil complaint cites to a plethora of federal criminal statutes and apparently invites us to either imply that federal criminal statutes give rise to implied private rights of action or engage in some form of criminal inquest or proceedings in the context of this civil lawsuit.

This we may not do.

At the outset, Lewis and Holmes err in generally implying a private right of action based upon federal criminal statutes. Quite the contrary, in this regard:

> The Court is guided by the general principle that courts are "reluctant to infer a private right of action from a criminal prohibition alone," especially where the criminal statute is "bare" as to private enforcement. Cent. Bank of Denver v. First Interstate Bank of Denver, 511 U.S. 164, 190 (1994); see also Leeke v. Timmerman, 454 U.S. 83, 86 (1981) (holding that private citizens cannot compel criminal prosecution). To this end, the Third Circuit has repeatedly held that criminal statutes generally do not create private rights of action. See Tezler v. Borough of Englewood Cliffs, 783 F. App'x 253, 257–58 (3d Cir. 2019); Timm v. Wells Fargo Bank, 701 F. App'x 171, 175 (3d Cir. 2017); Coleman v. Academy Bus, LLC, 858 F. App'x 584, 585 (3d Cir. 2021); see also Caterbone v. Lancaster City Bureau of Police, Civil Action No. 18-CV-2710, 2018 WL 3549266 at *3 (E.D. Pa. July 24, 2018) ("Criminal statutes do not generally provide a basis for a litigant's civil claims, and this Court lacks the authority to initiate criminal proceedings.").

Miller v. Nelling, No. CV 22-3329-KSM, 2023 WL 2743564, at *3 (E.D. Pa. Mar. 31, 2023).

Nor can the plaintiffs convert this civil case into a vehicle for instigating a criminal prosecution of others. Rather, it is well established that decisions regarding the filing of criminal charges are the prerogative of the executive branch of government, are consigned to the sound discretion of prosecutors, and under the separation of powers doctrine are not subject to judicial fiat. Indeed, it has long been recognized that the exercise of prosecutorial discretion is a matter, "particularly ill-suited to judicial review." Wayte v. United States, 470 U.S. 598, 607, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985). Recognizing this fact, courts have long held that a civil rights plaintiff may not seek relief in civil litigation in the form of an order directing the criminal prosecution of some third parties, finding that civil plaintiffs lack standing to make such claims and concluding that such relief simply is unavailable in a civil lawsuit. See, e.g., Ostrowski v. Mehltretter, 20 Fed. Appx. 87, 90 (2d Cir.2001) (stating that "Ostrowski has no standing to sue for any of Mehltretter's actions. First of all, he has not shown, injury-in-fact. The failure of Mehltretter to investigate or prosecute Bybel did not injure him in any direct manner-he has no 'personal stake in the outcome' of a perjury case brought against (or not brought against) another person ."); See also Kim v. Romero, 877 F.2d 64, 1989 WL 67116 at *1 (9th Cir. June 14, 1989) (affirming the dismissal of a suit against various prosecuting

authorities for their failure to bring charges against a sheriff for alleged battery); McMinn v. Damiani, 765 F.2d 145, 1985 WL 13323 (6th Cir. May 3, 1985) (affirming the dismissal for lack of standing a pro se civil rights case where plaintiff had sued state prosecuting authorities for failing to investigate or prosecute claims against various state judges and lawyers);Gessner v. Dep't of Corr., 3:14-CV-111, 2014 WL 972290 (M.D. Pa. Mar. 12, 2014); Snyder v. Aaron, CIV.A. 05–1602, 2006 WL 544466 (W.D.Pa. Mar.6, 2006); Mover v. Borough of North Wales, Civ. No. 00–1092, 2000 WL 1665132 at *2 (E.D.Pa.Nov.7, 2000) (stating that "Moyer has no judicially cognizable interest in Timothy Conley's criminal prosecution. Accordingly, an agreement to refrain from prosecuting Conley for sexual assault or to charge him with disorderly conduct or the act thereof violates no constitutional right that Moyer has standing to assert."); see also Wise v. Augustine, Civ. No. 97–2651, 1997 WL 534695 at *2 (E.D.Pa. Aug.8, 1997) (stating that "[a] private citizen has no constitutional, statutory, or common law right to require a public official to investigate or prosecute a crime."); Dundore v. O'Donnell, Civ. No. 85–2907, 1985 WL 2681 at *2 (E.D.Pa. Sept.17, 1985) (stating that "Defendant O'Donnell is alleged to have refused to file the criminal charges brought by plaintiffs. Although plaintiffs were no doubt aggrieved when O'Donnell refused to file the charges, they have no constitutional right that I am aware of to have criminal charges filed."); Corbin v. Stevens, Civ. No. 91–1054, 1992 WL 96684 at *2 (S.D.N.Y. April

30, 1992) (stating that "[p]laintiff possesses no constitutional right to have someone arrested....").

Therefore, to the extent that the plaintiffs attempt to generally imply private rights of action from federal criminal statutes or assert a right to pursue criminal charges in the guise of a civil lawsuit these claims also fail as a matter of law and will be dismissed.

**5. The Plaintiffs' Supplemental State Law Claims Will Be Dismissed.**

Simply put, the complaint lodged by Lewis and Holmes fails to state any cognizable federal claims. Therefore, the plaintiffs' federal claims—which form the grounds for their filing in this court—will be dismissed. The disposition of the plaintiffs' federal legal claims, in turn, dictates the appropriate course for the court to follow in addressing the ancillary state law claims that the plaintiffs may wish to pursue.

In a case such as this, where the jurisdiction of the federal court was premised on alleged federal claims which are found to be subject to dismissal at the outset of litigation, the proper course generally is for "the court [to] decline to exercise supplemental jurisdiction over the plaintiff's state law claims. 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if- ... the district court has dismissed all claims over which it has original jurisdiction."); United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)

(holding that when federal causes of action are dismissed, federal courts should not separately entertain pendent state claims).” <u>Bronson v. White</u>, No. 05-2150, 2007 WL 3033865, *13 (M.D. Pa. Oct. 15, 2007) (Caputo, J.) (adopting report and recommendation dismissing ancillary malpractice claim against dentist); <u>see</u> <u>Ham v. Greer</u>, 269 F. App'x 149, 151 (3d Cir. 2008) (citing <u>United Mine Workers</u>, 383 U.S. at 726 and <u>Tully v. Mott Supermkts., Inc.</u>, 540 F.2d 187, 196 (3d Cir. 1976)) (“Because the District Court appropriately dismissed [the inmate's] <u>Bivens</u> claims, no independent basis for federal jurisdiction remains”). As the Supreme Court has aptly observed:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

<u>United Mine Workers</u>, 383 U.S. at 726 (footnotes omitted).

The basic tenet that we should refrain from needlessly asserting jurisdiction over what are essentially state law claims applies with particular force here given that the remedies sought by Lewis and Holmes necessarily invite us to re-examine and potentially interfere with prior state court proceedings in the field of domestic relations. We should approach such issues with great caution given our lack of jurisdiction in this field since:

> The domestic relations exception “divests the federal courts of power to issue divorce, alimony, and child custody decrees,” <u>Ankenbrandt v.</u>

> Richards, 504 U.S. 689, 703, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992),
> because it has long been settled that "[t]he whole subject of the
> domestic relations of husband and wife ... belongs to the laws of the
> states, and not to the laws of the United States," Ex parte Burrus, 136
> U.S. 586, 593–94, 10 S.Ct. 850, 34 L.Ed. 500 (1890).

Daniels v. Cynkin, 34 F. Supp. 3d 433, 441 (D.N.J. 2014), aff'd, 597 F. App'x 704 (3d Cir. 2015).

In the instant case, we have concluded that Lewis and Holmes' federal claims should be dismissed. We also find that the plaintiffs' remaining state law claims directly implicate the domestic relations doctrine and are matters that are left "to the laws of the states, and not to the laws of the United States." Id. Therefore, in the exercise of our discretion, we will decline to assert supplemental jurisdiction over potential ancillary state law domestic relations claims in this case where all potential federal claims brought before us fail as a matter of law. Accordingly, these pendent state law claims will be dismissed without prejudice to pursuit of these state law claims in state court. See Payne v. Doe #1, No. 1:22-CV-1876, 2023 WL 3493315, at *5–6 (M.D. Pa. Mar. 27, 2023), report and recommendation adopted, No. 1:22-CV-1876, 2023 WL 3480895 (M.D. Pa. May 16, 2023). Those state courts stand ready to address these state law claims in the context of the pending state litigation.

## III.    Conclusion

Having found that the plaintiffs' complaint still fails on multiple scores to state a claim upon which relief may be granted, in the exercise of our discretion the

plaintiffs' motions for entry of default judgment, (Docs. 139, 141), will be denied, the complaint will be dismissed as to all parties, and the clerk will be directed to close this case.

An appropriate order follows.

_S/ Martin C. Carlson_
Martin C. Carlson
United States Magistrate Judge

DATED: July 21, 2025